IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **01-cv-01961-JLK (MJW)**

**RONALD W. KALKHORST**,

       Plaintiff,

v.

**UNITED PARCEL SERVICE, INC.**,

       Defendant.

_____

ORDER
_____

KANE, J.

This *pro se* employment discrimination action is before me on Defendant United Parcel Service's Motion for Summary Judgment. Finding Plaintiff has adduced insufficient admissible evidence to support a claim for age (or any other form of invidious) discrimination under a Rule 56(c) standard, I grant the Motion.

### *Facts and Procedural History.*

Plaintiff, a 46 year old Hispanic male, filed this action in 2001 after he was fired from his position as a part time UPS driver. The stated reason for his termination was the failure to report an accident on the job, an infraction that was grounds for automatic termination under the company's collective bargaining agreement with the drivers' union. Kalkhorst acknowledges the grounds for automatic termination and concedes

he failed to report the accident to the company, but states he reported it to the customer who passed it along to UPS so that, in essence, "no harm/no foul." Notwithstanding the existence of grounds for his termination, Kalkhorst maintains he was terminated not for any failure to report an accident, but because of his history of filing wage-related grievances and discrimination.

In his original *pro se* Complaint, Kalkhorst asserted claims for discrimination based on his age, race and sex. In support, Kalkhorst averred generally that "younger, non-Hispanic white men and women" received "preferential treatment" at UPS, and as support for that assertion, alleged that "younger non-Hispanic white men and women who had accidents" received "suspensions" rather than being terminated as he was. For his relief, Kalkhorst sought payment of wrongfully withheld wages and an unspecified amount of damages and statutory penalties. *See* Complaint, dated 10/4/2001.

After retaining an attorney (whom he has since terminated) Kalkhorst moved voluntarily to dismiss all of his claims except a claim for age discrimination and a "claim for wages in the approximate amount of $1200," and requested an order for referral to a magistrate judge for settlement. *See* Motion, dated 6/24/2002. I granted the Motion and referred the case for settlement proceedings, which were unsuccessful. The matter is now before me on Defendant UPS's Motion for Summary Judgment.

### *Summary Judgment Standard.*

Summary judgment is appropriate if the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only admissible evidence is considered when reviewing an order granting summary judgment. *Id.*; *see Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" only if a rational jury could find in favor of the nonmoving party on the evidence presented. *See id.*

The burden of showing that no genuine issue of material fact exists is borne by the moving party, here UPS. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998). When the moving party does not bear the ultimate burden of persuasion at trial, however, it may satisfy its burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. Reasonable inferences from any evidence presented are drawn in favor of the nonmovant.

### *Discussion.*

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Ibid*.

At the summary judgment stage, and in the absence of any direct or "smoking gun" evidence that plaintiff was terminated or treated badly because of his age, the Tenth Circuit uses the three-stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to evaluate claims under the ADEA. *See Rivera v. City and County of Denver*, 365 F.3d 912, 920-21 (10th Cir. 2004)(citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.1998)). Under this framework, plaintiff must initially establish a *prima facie* case of age discrimination by coming forward with evidence tending to demonstrate that (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he was discharged; and (4) his position was either not filled or filled by a younger person. *Id.* (citing *McDonnell Douglas* at 802). If he does so, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the basis for plaintiff's

discharge. *Id.* (as explicated in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Assuming a legitimate, nondiscriminatory reason is articulated, any presumption of discrimination created by the *prima facie* case drops out, and plaintiff is left with his ultimate burden of proving he was treated adversely – in this case, fired – because of his age. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507-508 (1993). On summary judgment, Plaintiff may meet this burden by demonstrating a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action was really a pretext for discrimination. *Burdine* at 256.

Kalkhorst stakes the viability of his claim on the assertion that failure to report an accident was "only a pretext to cover up the real reason for termination." Resp. to Mot. Summ. J. at 1. Before addressing the issue of pretext, however, I pause to observe that the threshold question of whether Kalkhorst established a *prima facie* case of discrimination is far from clear in this case. Despite all his efforts in submitting digital recordings and self-edited transcripts of grievance proceedings, Kalkhorst offers no evidence to support an inference that he was performing his job in a satisfactory manner or that he was replaced by a younger worker.

Nevertheless, because UPS does not challenge the existence of a *prima facie* case and because Kalkhorst admits the existence of evidence demonstrating a nondiscriminatory reason for his discharge, I go on to consider the issue of pretext.

The only evidence adduced by Kalkhorst to support his assertion that discrimination, rather than his failure to report the accident, motivated UPS's decision to fire him is his own testimony to that effect and his "no harm/no foul" theory that because he reported the accident to customer Kari Comyn who immediately reported it to UPS, the accident was actually "reported." I note at the outset that Comyn denies Kalkhorst said anything to her about the accident and management level employees at UPS testified that Kalkhorst said nothing to them about it until he was confronted after Comyn's call. Even assuming for purposes of summary judgment that a trier of fact would believe Kalkhorst, not Comyn, Kalkhorst does not demonstrate or explain why having reported the accident to a customer would be the same as reporting it to the company under Article 17. Kalkhorst concedes in his deposition that Article 17 of the collective bargaining agreement requires employees to report accidents to the *company*, not customers, that drivers carry accident reports with them in trucks for the very purpose of reporting accidents to the company, and that he himself filled out reports and followed this protocol when he was involved in other accidents on the job. Kalkhorst Depo. at 128-130.

The heart of Kalkhorst's claim is the assertion that whatever the technically terminable offense in failing to report the accident, that was not the real or "main" reason he was fired. *See* Kalkhorst Depo. at 123. To survive summary judgment,

Kalkhorst must present sufficient evidence to raise a genuine doubt about UPS's motivation. He attempts to do so by citing "log records in the possession of defendant UPS" that show younger drivers were given preferential treatment and allowed to "stay out longer on the clock" and receive "more pay." Resp. p. 1. Those allegations are just that, allegations, and are not supported by any admissible evidence in the record under a Rule 56 standard.

When Kalkhorst was asked to buttress his general allegations regarding discriminatory treatment with any actual facts to support them, he could not. He could recall no instance in which he raised the issue of age or age discrimination in any of his wage-related grievances (Depo. at 72) and could not recall raising age in any of his grievances generally. (Depo. at 78, 87.) He remembered a time or two he was called "old fart" by colleagues "joking around," but stated it was in a "camaraderie type of environment" and did not "have anything to do when it came to disciplining or anything like that [sic]." (Kalkhorst Depo. at 45.) Kalkhorst simply has come forward with no evidentiary support for his conclusory assertion that age, or any other type of invidious discrimination, was the most likely motivation for his termination.

Kalkhorst's uncertified transcriptions of various grievance hearings – self-edited and italicized in places for "emphasis" – do not alter this conclusion, nor do the audio CDs of those hearings also submitted. Even assuming UPS "had it out for him" or had

"targeted" him for termination based on his history of filing grievances (as alleged in his original complaint) or any other reason, without evidence linking those motivations to his age or any other discriminatory factor, Kalkhorst cannot survive summary judgment on a claim under the ADEA. *Hazen Paper Co. v. Biggins*, 507 U.S. at 610. *See also Neal v. Roche*, 349 F.3d 1246, 1252 (10th Cir. 2003)(recognizing in title VII context that employers may have "hidden" reasons for terminating employees or hiring someone less qualified – as long as the reasons are nondiscriminatory, they are free to hire and fire as they choose).

Finally, it should be noted there is an after-acquired evidence issue in this case given Kalkhorst's admission, during the course of discovery, that he gave false information in his employment application regarding having never been fired from a previous job. He was, in fact, terminated by a previous employer, Western Electric, after he grabbed his boss and "swung her around" when she tried to walk away from him. Kalkhorst Depo. at 132. Under *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 358 (1995), even if Kalkhorst had survived summary judgment and proceeded to trial on his discrimination claim, UPS would be entitled to the defense that it would never have hired Kalkhorst had he been truthful about this incident its damages would be substantially limited as a result.

### *Conclusion.*

For the foregoing reasons, I conclude Kalkhorst has not met the requirements necessary to establish pretext in this case. Specifically, the evidence he presents is not sufficient to raise a genuine doubt that UPS's motivation in terminating his employment was anything other than his failure to report the accident, or some other nondiscriminatory reason. *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003). Simply put, no reasonable jury could be persuaded by the evidence in this record that UPS's true motivation in terminating Kalkhorst was invidious discrimination.

BY THE COURT:

June 30, 2005    **s/JOHN L. KANE**
                 SENIOR JUDGE
                 UNITED STATES DISTRICT COURT